ATTORNEY FOR THE RESPONDENT
Pro se

ATTORNEYS FOR THE INDIANA SUPREME COURT
DISCIPLINARY COMMISSION
G. Michael Witte, Executive Secretary
Angie L. Ordway, Staff Attorney
Indianapolis, Indiana



FILED
Feb 11 2011, 1:08 pm

CLERK
of the supreme court,
court of appeals and
tax court

# In the
# Indiana Supreme Court

No. 98S00-0911-DI-533

IN THE MATTER OF:

PATRICK K. ROCCHIO,

*Respondent.*

Attorney Discipline Action
Hearing Officer Barbara L. Brugnaux

**February 11, 2011**

**Per Curiam.**

This matter is before the Court on the report of Hon. Barbara L. Brugnaux, the hearing officer appointed by this Court to hear evidence, on the Indiana Supreme Court Disciplinary Commission's "Verified Complaint for Disciplinary Action," and on the post-hearing briefing by the parties. The Respondent's 1972 admission to this state's bar subjects him to this Court's disciplinary jurisdiction. See IND. CONST. art. 7, § 4.

We find that Respondent, Patrick K. Rocchio, engaged in attorney misconduct that, standing alone, would warrant a sanction in the lowest range. However, Respondent's conduct during the disciplinary process demonstrates his inability to recognize his clear violations of this state's disciplinary rules, his contempt for those rules and this disciplinary process, and his lack

of appreciation for the role of this Court's hearing officer and Disciplinary Commission members and staff. In order to protect the people in this state from further misconduct, these substantial aggravating circumstances require suspending Respondent from the practice of law without automatic reinstatement.

## Background

The Hearing Officer's "Findings of Fact and Conclusions of Law" ("Findings") and undisputed contents of exhibits are summarized below.

Count I. In 2008, D.W., a resident of Michigan City, Indiana, was the victim of a serious motor vehicle accident in Indiana. Respondent sent a letter to her based on an article about the accident in a newspaper. The letter stated:

> For thirty six (36) years it has been my business to represent people who have been injured as a result of another person's negligent operation of a motor vehicle. My past professional experience includes successfully representing hundreds of clients in both Michigan and Indiana recovering millions of dollars for deserving clients.
>
> For a free no-obligation conference that will provide you with an explanation of your rights to recover payment of insurance benefits for your medical care expenses, your income loss, and your pain and suffering, please call my law office at [phone number] and schedule a conference at your earliest convenience.

Neither the letter nor its envelope contained the words "Advertising Material," and the letter was not filed with the Commission.

Count II. Respondent is licensed to practice law in Michigan and practices primarily in that state. Respondent registered his Indiana law license as inactive effective August 24, 2009. After this date, however, his website stated: "With my Indiana law license, I am capable of handling matters related to Indiana law, including real estate transactions, estate planning and probate administration, insurance compensation [sic] bodily injury and property damage claims, business and management law, and Social Security disability claims." On a second website,

2

Respondent stated: "I am licensed to practice law in both Indiana and Michigan." Neither site indicated that Respondent's Indiana license was inactive.[1]

Violations. The Commission charged and the hearing officer concluded that Respondent violated the following Indiana Professional Conduct Rules:[2]

Count I: Rule 7.2(c)(3) by using a statement in a public communication that "is intended or is likely to create an unjustified expectation"; Rule 7.2(d)(2) by using a public communication that "contains statistical data or other information based on past performance or prediction of future success"; and Rule 7.3(c) by not including in the letter to D.W. "the words 'Advertising Material' conspicuously placed both on the face of any outside envelope and at the beginning" of the letter and not filing a copy of the letter with the Commission.

Count II: Rule 5.5(b)(2), as a lawyer not admitted to practice in law in Indiana, holding himself out to the public or otherwise representing that he is admitted to practice law in Indiana.

The hearing officer found a fact in mitigation to be Respondent's lack of disciplinary history. The hearing officer found the following facts in aggravation: (1) Respondent lacks insight into his misconduct; (2) he is unwilling to accept responsibility for his misconduct; (3) he lacks remorse; (4) he displayed dishonesty in denying he sent the letter at issue in Count I for the purpose of seeking professional employment; (5) he is disrespectful of the Rules of Professional Conduct, particularly those dealing with attorney advertising; (6) he was unable to conduct himself in a rational and civil manner in this proceeding; and (7) he sent an inappropriate email to the hearing officer (with a copy to disciplinary counsel) trying to persuade her to his point of view.

---

[1] Respondent's attorney record indicates that he changed his Indiana law license to inactive status in 1987, reactivated it in 2005, changed it to inactive in 2006, reactivated it in 2008, and again changed it to inactive in 2009. We note that the letter to D.W. was sent on letterhead from an Indiana law office that listed Respondent as "Of Counsel" and "Licensed in Indiana and Michigan," during a period when Respondent's license was active.

[2] The rules in this opinion are cited and quoted as effective at the time of the events at issue unless otherwise noted. Indiana's rules concerning communications about a lawyer's services (Rules 7.1, 7.2, 7.3, 7.4, and 7.5) were amended effective January 1, 2011.

Citing these aggravating circumstances, the hearing officer recommended that Respondent be suspended for a least one year without automatic reinstatement.

### Discussion

Jurisdiction and choice of law. Respondent argues that either this Court lacks jurisdiction over his alleged misconduct or that Michigan law should apply. Because Respondent's Indiana law license was on active status at the time of the events at issue in Count I, this Court's jurisdiction over these charges is clear. Prof. Cond. R. 8.5(a). His affirmative renewal of his Indiana license, although inactive at the time of the events at issue in Count II, subjects him to this Court's disciplinary jurisdiction under Rule 8.5(a).

Indiana law also applies to Count II under Rule 8.5(b)(2). While the alleged website violations do not have a specific geographical location, Respondent's representations regarding his Indiana law license have their predominant effect in Indiana. Indiana has a greater interest than any other jurisdiction in an attorney's alleged misrepresentations about his or her authority to practice law in the state.

Count I. We reject Respondent's argument that these charges violate the U. S. Constitution as without merit. Unlike the rule at issue in Shapero v Kentucky Bar Ass'n, 486 U.S. 466 (1988), Indiana's rule contains no such blanket prohibition on solicitations. As to his contention that the letter to D.W. was a private correspondence, not a "public communication" within the meaning of Rule 7.2, precedent dictates that this rule applies to letters mailed directly to individuals soliciting their employment. Matter of Murgatroyd, 741 N.E.2d 719 (Ind. 2001); Matter of Huelskamp, 740 N.E.2d 846 (Ind. 2000).

We agree with the hearing officer that the letter's assertion that Respondent had succeeded in recovering millions of dollars for hundreds of deserving clients violated Rule 7.2(c)(3) as a statement that "is intended or is likely to create an unjustified expectation" and Rule 7.2(d)(2) as "statistical data or other information based on past performance or prediction of future success." Matter of Wamsley, 725 N.E.2d 75 (Ind. 2000).

4

Contrary to Respondent's contention that the letter was intended only to advise D.W. that she consider seeking the advice of capable legal counsel, the letter constituted a "written . . . communication from a lawyer soliciting professional employment from a prospective client potentially in need of legal services in a particular matter" and is governed by Rule 7.3(c). And while Respondent characterizes his failure to comply with the rule's labeling and filing requirements as "a harmless transgression," violating these requirements is not a technicality. Matter of Benkie, 892 N.E.2d 1237, 1240 (Ind. 2008). Laypersons contending with legal issues in a time of transition, if not outright crisis, need to be notified clearly which of the myriad of communications they receive can be safely disregarded as unsolicited lawyer advertising material. Matter of Skozen, 660 N.E.2d 1377, 1378-79 (Ind. 1996).

Count II. To retain an active Indiana law license, an attorney must pay an annual registration fee, Admis. Disc. R. 2(b), and comply with Indiana's continuing legal education ("CLE") requirements, Admis. Disc. R. 29. However, an attorney may maintain a license in "inactive" status by paying one-half of the annual registration fee for an active license and filing an "affidavit of inactivity" stating that he or she is not "engaged in the practice of law in this state." Admis. Disc. R. 2(c). An attorney in inactive status is exempt from Indiana's CLE requirements. Admis. Disc. R. 29(8)(d). We provide the option of inactive status, for example, to accommodate the eventual return to the practice of law by those attorneys who assume long-term but not permanent, full-time administrative or management positions in government, business, or academia. The purpose of an inactive Indiana law license is not to allow an attorney who practices law to avoid paying registration fees and complying with Indiana's CLE requirements as long as appearance in an Indiana court can be avoided.

By the statements on his websites quoted above, Respondent held himself out to the public or otherwise represented that he was admitted to practice law in Indiana in violation of Rule 5.5(b)(2). (Respondent repeatedly argues that the statements on his website did not constitute practicing law in Indiana but he is not charged with that offense.)

5

Discipline. This Court has imposed a public reprimand on a number of attorneys who have violated the rules on written communications, *e.g.*, Matter of Benkie, 892 N.E.2d 1237 (Ind. 2008); Matter of Huelskamp, 740 N.E.2d 846 (Ind. 2000), and in some cases an even lesser sanction. Standing alone, that would be our assessment of the sanction warranted here. The addition of the website violation would not warrant an increased sanction. But Respondent's actions throughout the disciplinary process constitute substantial aggravating circumstances requiring a concomitant increase in sanction.

Respondent's Brief in Support of Petition for Review includes the following:

> It must be stated, at the risk of offending others that anyone who has not suffered a full frontal cranial lobotomy knows that the words published on a Michigan lawyer's law office internet describing his professional narrative, including his licensing credentials, is not the practice of law in the State of Indiana.
>
> . . . .
>
> This rather bizarre and foolish disciplinary process regarding my alleged attorney misconduct long ago moved away from the focus upon the misdeeds described in the Verified Complaint.
>
> This proceeding is about behavior and protocol; what to say and how to behave in the presence of the supreme monarchy, or in this situation, the representatives of the Indiana Supreme Court who alone decide what is and what is not attorney misconduct subject to discipline.
>
> . . . .
>
> My experience with the Indiana attorney disciplinary system is a hideous aberration of justice: a Disciplinary Commission and staff attorney with a self-image of pompous arrogance; a hearing officer who permits herself to be used as a rubber stamp . . . .

Similar examples can be found on nearly every page of Respondent's briefs to this Court and to the hearing officer, as well as in his correspondence to counsel for the Commission and in his testimony before the hearing officer. The hearing officer noted Respondent's invectives against the Commission's former executive secretary ("a first-class ass"), the Commission ("soft and lazy"), the disciplinary process ("a modern day version of the Star Chamber, a Salem witch

6

hunt, or a Spanish Inquisition"), and this Court's disciplinary rules ("frivolous and antiquated," "rules of behavior conceived over a cigar and brandy . . . during the late Victorian Era by a group of self-impressed lawyers"), as well as his repeated use of caustic terminology (e.g., "despicable," "deceptive and ridiculous," "naked stupidity," "cutesy and evasive"). The Respondent also engages in personal attacks on the hearing officer, calling her "sadistic" and displaying "a disappointing level of ignorance, arrogance, and stupidity." We concur with the hearing officer's finding that "Respondent's inflammatory statements were not spontaneous remarks made in the heat of the moment, but were his planned, intentional, oft-repeated comments."

In addition, Respondent is totally non-repentant. He makes clear that he believes this Court's rules governing lawyer employment solicitation and this entire proceeding are silly. In an email to Commission counsel, he stated that if he had a chance, he would again send the letter to D.W. Near the end of this testimony before the hearing officer, he went into great detail describing how he would essentially do it all over again, at least for a Michigan resident. He stated: "I will not misrepresent the content of my letter by trivializing it with the notation 'Advertising Material,'" and "I will be thankful that Michigan does not attempt to impose frivolous and antiquated regulatory restrictions upon its licensed attorneys . . . ."

Respondent is, of course, entitled to contest the charges against him. Our obligation is to impose discipline that is sufficient to protect the people in this state from lawyer misconduct and to ensure that misconduct does not recur. Given Respondent's inability to recognize his clear violations of this state's disciplinary rules, his contempt for those rules and this disciplinary process, and his lack of appreciation for the role of this Court's hearing officer and Disciplinary Commission members and staff, we conclude that a period of suspension is warranted.

While the hearing officer recommends that Respondent be suspended for at least one year without automatic reinstatement, we find a period of 180 days to be sufficient. But we fully concur in her recommendation that Respondent prove his commitment and ability to follow this

state's rules of professional conduct before being reinstated to practice in this state.[3]   To be reinstated after this minimum period, Respondent will be required to meet the requirements of Admis. Disc. R. 23(4)(b), including proving by clear and convincing evidence that:

- His attitude towards the misconduct for which he is being disciplined is one of genuine remorse;

- His conduct since the discipline was imposed has been exemplary and above reproach;

- He has a proper understanding of and attitude towards the standards that are imposed upon members of the bar and will conduct himself in conformity with such standards; and

- He can safely be recommended to the legal profession, the courts and the public as a person fit to be consulted by others and to represent them and otherwise act in matters of trust and confidence, and in general to aid in the administration of justice as a member of the bar and an officer of the courts.

Id.


## Conclusion


The Court concludes that Respondent violated Indiana Professional Conduct Rule 7.2(c)(3) and (d)(2)  by including in a public communication a statement intended or likely to create an unjustified expectation and statistical data or other information based on past performance or prediction of future success, that he violated Rule 7.3(c) by using a written solicitation for professional employment without labeling it as "Advertising Material" and filing it with the Commission, and that he violated Rule 5.5(b)(2) by falsely representing on his websites that he was licensed to practice law in Indiana when his license was inactive.  We conclude that the serious aggravating circumstances discussed above warrant suspension without automatic reinstatement.

---

[3] Because Respondent's Indiana law license is currently inactive, he is currently precluded from practicing in this state.  The suspension of his license prevents him from reactivating his license until he undergoes the reinstatement process.

For Respondent's professional misconduct, the Court suspends Respondent from the practice of law in this state for a period of not less than 180 days, without automatic reinstatement, effective on the date of this opinion. Respondent shall fulfill all the duties of a suspended attorney under Admission and Discipline Rule 23(26). At the conclusion of the minimum period of suspension, Respondent may petition this Court for reinstatement to the practice of law in this state, provided Respondent pays the costs of this proceeding, fulfills the duties of a suspended attorney, and satisfies the requirements for reinstatement of Admission and Discipline Rule 23(4).

The costs of this proceeding are assessed against Respondent. The hearing officer appointed in this case is discharged.

The Clerk of this Court is directed to give notice of this opinion to the hearing officer, to the parties or their respective attorneys, to the Michigan Attorney Discipline Board, and to all other entities entitled to notice under Admission and Discipline Rule 23(3)(d). The Clerk is further directed to post this opinion to the Court's website, and Thomson Reuters is directed to publish a copy of this opinion in the bound volumes of this Court's decisions.

Shepard, C.J., and Dickson, Sullivan, and David, JJ., concur.

Rucker, J., dissents to the length of suspension believing it disproportionate to the misconduct alleged, and inconsistent with sanctions imposed for similar misconduct. Instead he would impose a thirty (30) day suspension without automatic reinstatement.